# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHET SMITH, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 19-CV-03373 |
| | ) | |
| COOK COUNTY, ILLINOIS, et al., | ) | |
| | ) | Judge John Z. Lee |
| Defendants. | ) | Magistrate Judge Susan E. Cox. |
| | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF EXHAUSTION**

Plaintiff, Chet Smith, by his attorney PETER J. MCANDREWS, pursuant to Fed. R. Civ. P. 56 and Local Rule LR 56.1(b), submit the following Memorandum of Law in response to Defendants' Motion for Summary Judgment on the Issue of Exhaustion ("Motion") and states as follows:

## I.   INTRODUCTION

While detained at the Cook County Department of Corrections (CCDOC), Plaintiff, Chet Smith, filed a *pro se* civil rights action under 42 U.S.C. § 1983.[1]  *See* Doc. 1.  Plaintiff complains that (i) Defendants were deliberately indifferent to his serious medical needs ("Count I") (*see* Doc. 64, at ¶¶ 58-72); and (ii) Defendants subjected Plaintiff to unconstitutional conditions of confinement ("Count II") (*see* Doc. 64, at ¶¶ 73-76).

With reference to Count I, after repeatedly asking for, being promised that he would receive, and not receiving until after an extended period of ongoing suffering, a replacement inhaler for treatment of Plaintiff's severe asthma, Plaintiff filed a grievance form complaining about the Defendants' deliberate indifference to Plaintiff's serious medical needs, hereinafter "Count I Grievance."  Plaintiff, in reliance on Defendants' serial misrepresentations that he would receive an inhaler, did not file his Count I Grievance until more than 15 days after he began to suffer from Defendants' failure to provide an inhaler.  It was only after Plaintiff filed his Count I Grievance that an inhaler was provided and his ongoing suffering ended.  Nevertheless, the Defendants wrongly designated Plaintiff's Count I Grievance as non-compliant due to alleged untimeliness and provided no procedure for appealing such designation, thereby rendering the CCDOC administrative remedies unavailable to the Plaintiff under the prevailing CCDOC procedures.  Defendants' designation of Plaintiff's Count I Grievance was wrongful at least

---

[1] After Plaintiff was assigned counsel, Plaintiff filed a First Amended Complaint (Doc. 6), a Second Amended Complaint (Doc. 50) and a Third Amended Complaint (the "TAC") (Doc. 64).

because Defendants' serial misrepresentations delayed Plaintiff's submission of the Count I Grievance and because Plaintiff's injury and Defendants' conduct continued through the entire 15-day time period preceding submission of the grievance.  Because the CCDOC administrative remedies with respect to Plaintiff's Count I Grievance, including any administrative appeal thereof, were unavailable to the Plaintiff, Plaintiff did exhaust all available administrative remedies for Count I.

With reference to Count II, it is undisputed that prior to filing his complaint, Plaintiff filed a grievance form complaining about his conditions of confinement, hereinafter "Count II Grievance."  Plaintiff testified under oath that upon receiving an unsatisfactory response to his Count II Grievance he immediately submitted a written appeal of Defendants' response to his grievance.  At this stage, Plaintiff's unrebutted sworn testimony that he appealed the Count II Grievance is sufficient to raise a genuine issue of material fact and, thereby, defeat Defendants' summary judgment motion of failure to exhaust administrative remedies for the Count II Grievance. Under prevailing CCDOC procedures, upon appealing the Count II Grievance, Plaintiff had exhausted his available administrative remedies as to Count II.

Accordingly, the Court should deny Defendants' motion for summary judgement on the issue of exhaustion because Plaintiff exhausted his *available* administrative remedies.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A party seeking summary judgment bears the initial responsibility of informing the court of the basis for the motion, and identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

2

which it believes demonstrate the absence of a genuine issue of material fact.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248. A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Supporting materials designed to establish issues of fact in a summary judgment proceeding 'must be established through one of the vehicles designed to ensure reliability and veracity -- depositions, answers to interrogatories, admissions and affidavits.'" *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987). In determining whether there is a genuine issue of material fact, the court must construe all facts in the light most favorable to the party opposing the motion and draw all inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

## III.   STATEMENT OF FACTS

For a complete recitation of the facts for this case, Plaintiff incorporates by reference its response to Defendants' statement of facts and Plaintiff's statement of additional materials facts filed separately pursuant to LR 56.1(b)(2) and LR 56.1(b)(3). Plaintiff's responses and additional materials facts are cited to as "RSOF #" and as "AMF #," respectively.

## IV.   ARGUMENT

### A. Defendants have not Articulated on a Count by Count Basis why Plaintiff Failed to Exhaust Available Administrative Remedies

Plaintiff's Third Amended Complaint ("TAC") includes two separate and distinct counts; each based on a different and unique set of facts. Count I alleges that Defendants were deliberately indifferent to his serious medical needs. Count II relates to Plaintiff's conditions of confinement. In their opening brief, Defendants make no attempt to address the unique set of facts that underpin

each Count and consequently, their exhaustion defense as to each Count.  Defendants also disregard and fail to address Plaintiff's contention that as to Count I, administrative remedies were not available and/or were fully exhausted.

With regard to Count I, Plaintiff relied on Defendants' repeated misrepresentations that he would be provided with a replacement inhaler, and delayed filing a grievance.  Plaintiff maintains that the repeated misrepresentations and Defendants' wrongful, but non-appealable, designation of his Count I Grievance as non-compliant rendered the grievance process unavailable to him. Accordingly, there were no administrative remedies available to Plaintiff to exhaust and/or any available remedies were exhausted.  Plaintiff articulated his "unavailability" defense in his response to Defendants' Interrogatory No. 5.  (AMF 14).  Defendants failed to address Plaintiff's "unavailability" defense, when asked to do so during discovery, and Defendants' summary judgment memorandum does not address Plaintiff's "unavailability" defense.

With regard to Count II, Plaintiff asserts that he appealed Defendants' response to his Count II Grievance regarding the conditions of his confinement by challenging Defendant's response on a second grievance form.  (RSOF 25). Because, contrary to the provisions of the CCDOC Inmate Handbook (AMF 8), Division IX does not provide inmates with a copy of their grievances or appeals upon receipt, it is unclear what happened to Plaintiff's appeal contained in the second grievance form. That Defendants failed to provide Plaintiff with a receipt copy of his appeal and that Defendants may have discarded or lost the document containing Plaintiff's appeal does not establish that Plaintiff did not file such an appeal, particularly at the summary judgment stage.  "The absence [of] clear information regarding what happened to a particular grievance makes defendant counsel's task of meeting their burden of proof on the exhaustion defense next

to impossible." *Spivey v. Chapman*, 2012 WL 4936623, at *4 (S.D. Ill. Sept. 14, 2012), report and recommendation adopted, 2012 WL 4952395 (S.D. Ill. Oct. 17, 2012).

### B. Defendants' Misrepresentations Rendered Administrative Remedies Unavailable as to Count I

The facts related to Count I are not in dispute. Between March 16, 2019 and the filing of the grievance regarding Count I, the Count I Grievance, Plaintiff submitted numerous health service request ("HSR") forms emphatically seeking a rescue inhaler to treat his asthma; a condition that was exacerbated by the incessant burning of articles by the inmates on Plaintiff's deck. (AMF 10). Plaintiff was repeatedly assured that he would be provided with an inhaler. (AMF 11). For over a month, Plaintiff relied on Defendants' misrepresentations that he would receive an inhaler. *Id.* Defendants ultimately told Plaintiff that he didn't receive an inhaler because allegedly his insurance did not cover an inhaler. (AMF 12). Upon receiving this explanation, which Plaintiff disagreed with, Plaintiff filed his Count I Grievance on April 19, 2021. (AMF 13). On the Count I Grievance form, Plaintiff stated that the date of the incident, (*i.e.*, one of the dates he requested and was promised an inhaler[2]) was March 16, 2019. (RSOF 30). The Count I Grievance was summarily rejected as being non-compliant because the purported "incident" occurred over fifteen days before the filing of the Count I Grievance. (RSOF 31 and AMF 13). Under the CCDOC procedures, a non-compliant grievance, including the designation as non-compliant, cannot be appealed. (AMF 19).

42 U.S.C.A. § 1997 provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are *available* are exhausted." (emphasis added). "An inmate, that is, must exhaust available remedies, but need not

---

[2] In fact, Plaintiff filed his first request for an inhaler on March 2, 2019.

5

exhaust unavailable ones." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing Ross v. Blake, 578 U.S. 632 (2016)).

"[U]nder the Supreme Court's decision in *Ross v. Blake*, a prison grievance process is unavailable—and thus may be deemed exhausted—in three circumstances: (1) when the remedy 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use'; and (3) 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020) (*citing Ross v. Blake*, ―― U.S. ――, 136 S. Ct. 1850, 1859–60, 195 L.Ed.2d 117 (2016)).

"[T]o defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation." *Hardy*, 959 F.3d at 588.

Here, Plaintiff's Count I Grievance was asserted to be non-compliant only because it was not submitted within 15 days from the first time he requested and was promised an inhaler. However, Plaintiff did not submit his Count I Grievance in that 15-day period because he relied on Defendants' repeated misrepresentations that he would be provided with an inhaler. Specifically, Plaintiff relied on and was misled by Defendants' misrepresentation. As a consequence of being misled, Plaintiff did not file the Count I Grievance until it became clear that Defendants did not intend to uphold their serial promises to provide an inhaler. As such, Defendants misrepresentations interfered with Plaintiff's "use of the grievance process" rendering

them "unavailable." Because administrative remedies were unavailable, Plaintiff was not required to exhaust the unavailable administrative remedies as to the Count I Grievance.

Furthermore, Defendants designation of the Count I Grievance as non-compliant was incorrect because the aggrieved injury and conduct continued through and beyond the 15-day period preceding the submission of the Count I Grievance. Accordingly, the Count I Grievance was not untimely or non-compliant. However, Defendants provide no appeal process for challenging the designation of a grievance as non-compliant, and, thus, Plaintiff exhausted all available administrative remedies for Count I.

Additionally, although "the Seventh Circuit has never decided whether equitable estoppel applies to the PLRA's exhaustion requirement" (*see Everett v. Hodges*, 2011 WL 13195913, at *1 (N.D. Ill. Dec. 8, 2011)), "other circuits have found that equitable estoppel applies to the PLRA's exhaustion requirement[.]" *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006); *see also Lewis v. Washington*, 300 F.3d 829, 834 (7th Cir. 2002) (recognizing that "the Fifth Circuit has held that equitable estoppel can apply to the PLRA exhaustion requirement."). These sister circuits' "ruling on this matter is persuasive because non-jurisdictional prerequisites to suit in federal court are typically subject to equitable estoppel." *Lewis* at 300 F.3d at 834. "[T]he three traditional elements of estoppel (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; (3) detriment to the party asserting estoppel. *Elmore v. Salas*, 2016 WL 2755326, at *5 (N.D. Ill. May 12, 2016). Plaintiff submits that the elements of estoppel are present here. Defendants misrepresented that Plaintiff would receive an inhaler. Plaintiff relied on the misrepresentation. The reliance was to the detriment of the Plaintiff because he was denied use of the prison grievance procedures.

Accordingly, Defendants should also be equitably estopped from raising the exhaustion defense as to the Count I Grievance.

For the foregoing reasons, the Court should deny Defendants' motion for summary judgement for failure to exhaust administrative remedies as to Count I.

### C.  Plaintiff's Exhausted his Administrative Remedies as to his Count II Grievance, or Alternatively Administrative Remedies were Unavailable

Plaintiff complained in his Count II Grievance form that he could not breathe because of the smoke created from the burning of spoons by the other inmates, which was exacerbated by his asthma.  (AMF 21). Defendants responded in relevant part that "[a]ll decks are smoke free."  (AMF 24). Dissatisfied with the response, Plaintiff testified at deposition that he appealed the response on the same day.  (AMF 25). Plaintiff further testified that he appealed his Count II Grievance using a new grievance form.  (AMF 25).  Plaintiff's interrogatory answers further describe Plaintiff's appeal as submitted on a second grievance form. Plaintiff's sworn testimony and answers to interrogatories constitute admissible evidence sufficient to defeat Defendants' motion for summary judgement for failure to exhaust as to Court II.  *See Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013) (reversing district court and holding that court should have admitted appellant's statements based on personal knowledge as evidence.).

Perhaps recognizing that Plaintiff's sworn testimony and answers to interrogatories defeat Defendants' motion, Defendants contend that Plaintiff's appeal did not exhaust his remedies. Specifically, Defendants incorrectly contend that "CCDOC grievance guidelines *require* inmates to use the same grievance response to file their appeal" and because Plaintiff did not present his appeal on the Count II Grievance form, Plaintiff's appeal does not count for purposes of exhaustion. Doc. 87 at p. 7 (emphasis added). Defendants further argue that a valid appeal is one

where the inmate completes the "INMATE's REQUEST FOR AN APPEAL" section on the same grievance form that was used to submit the appealed grievance.

Defendants' contention is without merit. First, the CCDOC grievance procedures don't *require* inmates to use the same grievance response to file their appeal, as Defendants contend. The CCDOC procedures set forth requirements that are mandatory by using the word MUST. For example, the CCDOC Inmate Handbook provides: "A grievance appeal must be filed . . ." and "you must appeal your grievance within this time frame … ." (RSOF 23). In contradistinction, the same provision merely states "use the same grievance form to file your appeal." (RSOF 23). It does not state "you *must* use the same grievance form to file your appeal." (RSOF 23). The word "must" is conspicuously missing from this statement. Thus, the Court should reject Defendants' invitation to construe the phrase "use the same grievance form to file your appeal" as necessarily requiring use of the same grievance form to file an appeal.

Second, any attempt to read such a requirement into the CCDOC appeal procedures is inconsistent with the language describing the CCDOC procedures and the procedures themselves. Specifically, as Defendants admit, the CCDOC procedures "allow[] the use of any paper to file a Grievance." (AMF 7). "[A]ny paper" includes a blank sheet of paper, for example. Of course, a blank sheet of paper will not have an "INMATE'S REQUEST FOR AN APPEAL" section. Using Defendants' flawed reasoning, an inmate who files a grievance on a blank paper would never be able to appeal an adverse decision because the paper will not have an "INMATE'S REQUEST FOR AN APPEAL" section. Adopting Defendants reasoning would result in the absurd outcome that grievances submitted on anything but a grievance form are incapable of exhaustion. The Court should reject Defendants flawed interpretation of the CCDOC appeal procedures.

Defendants also argue that Plaintiff failed to properly exhaust his available remedies because he failed to follow-up on his appeal prior to initiating this lawsuit. *See* Doc. 87 at pp. 8-9. Defendants' argument has no basis in the CCDOC procedures. The CCDOC procedures do not place an affirmative duty on an inmate to follow-up on his appeal of a decision on a filed grievance. To the contrary, the CCDOC procedures provide that "exhaustion of remedies has occurred once you have appealed your grievance document in a timely manner within the CCDOC grievance procedures." (AMF 26). Plaintiff timely appealed the Count II Grievance, at which time "exhaustion of remedies ha[d] occurred" and he could properly initiate a lawsuit. The Court should reject Defendants' argument that Plaintiff failed to properly exhaust his available remedies because he failed to follow-up on his appeal prior to initiating this lawsuit.

Finally, Defendants assert that because Plaintiff "had access to the [CCDOC] Inmate [] Handbook[,]" "Plaintiff's lack of understanding [of the CCDOC grievance procedures] is irrelevant." Doc. 87 at p. 9. Defendants misrepresent the facts. Plaintiff testified under oath that he never received a CCDOC Inmate Handbook from the CCDOC[3]. (RSOF 7). Rather, the first time Plaintiff ever possessed a CCDOC Inmate Handbook was when, after the relevant time period, he got the CCDOC Inmate Handbook from an inmate. (AMFs 3 and 4). Accordingly, the Court should discount Defendants' incorrect assertion.

Separately, assuming *arguendo* that the appeal filed on the second grievance form does not qualify as an appeal, it nevertheless still qualified as a new grievance. By not responding to this follow-up grievance, Defendants rendered the administrative scheme unavailable. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) ("An administrative scheme can be "unavailable" to a prisoner

---

[3] Defendants rely on a form bearing Plaintiff's signature as proof that Plaintiff received a CCDOC Inmate Handbook. However during his deposition, Plaintiff clarified that he never got a copy of the Handbook. (RSOF 7).

10

when a prison fails to respond to a prisoner's grievance and, in so doing, prevents that prisoner from exhausting administrative remedies.").   Further, the CCDOC procedures require CCDOC personnel to provide inmates with a copy of their grievance form when an inmate files a grievance. (AMF 8). With reference to the Count II Grievance, Division IX did not comply with the CCDOC procedures in this regard.   (AMF 22).  Because Defendants did not comply with established procedures, Plaintiff does not have a copy of this appeal/grievance form.   "The absence [of] clear information regarding what happened to a particular grievance makes defendant counsel's task of meeting their burden of proof on the exhaustion defense next to impossible." *Spivey v. Chapman*, 2012 WL 4936623, at *4 (S.D. Ill. Sept. 14, 2012), report and recommendation adopted, 2012 WL 4952395 (S.D. Ill. Oct. 17, 2012).

Alternatively, Defendants' failure to adhere to their own guidelines and procedures rendered administrative remedies unavailable.   In particular, the CCDOC Inmate Grievance Procedures provide that if no exceptions apply, the CCDOC has 15 calendar days to provide a written response.  (AMF 9).  Defendants admit that no exceptions apply to Plaintiff's Count II Grievance. (AMF 15).  The CCDOC Inmate Grievance Procedures further provide that to exhaust administrative remedies, an inmate must appeal the denial within 15 calendar days from the date of the decision.  (AMF 16).  Thus, the procedures contemplate a maximum of 30 days between the occurrence of an incident and the filing of an appeal. To comply with this timeline, Plaintiff should have received a response in 15 calendar days.  He did not. Instead, Plaintiff received a written response to the Count II Grievance on February 20, 2019; twenty four days after the filing of the Count II Grievance.  (AMF 23).  By failing to follow their procedures, Defendants made the procedures "'so opaque that it bec[a]me[], practically speaking, incapable of use.'"  *Hardy*, 959 F.3d at 584.

11

For the foregoing reasons, the Court should deny Defendants' motion for summary judgement for failure to exhaust administrative remedies as to Count II.

## V. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment for failure to exhaust administrative remedies.

DATED:  September 27, 2021            Respectfully submitted,

/s/ Peter J. McAndrews
Peter J. McAndrews
pmcandrews@mcandrews-ip.com
Rajendra A. Chiplunkar
rchiplunkar@mcandrews-ip.com
Ashley M. Ratycz
aratycz@mcandrews-ip.com
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison St., 34th Floor
Chicago, IL 60661
(312) 775-8000

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2021, I electronically filed the foregoing with the Clerk of the Court via CM/ECF, which will send notifications of such filing via electronic mail to all counsel of record.

<u>/s/ Peter J. McAndrews</u>